UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

      Plaintiff,

v.

DANDRICK LEGARDYE,

      Defendant.

_____/

Case No. 24-CR-20333

F. Kay Behm
United States District Judge

**OPINION AND ORDER DENYING MOTION TO SUPPRESS
AND FOR A *FRANKS* HEARING (ECF No. 65)**

## I.    PROCEDURAL HISTORY

Defendant filed a motion to suppress and for a *Franks* hearing on March 10, 2026.  (ECF No. 65).  The government filed a response in opposition on March 26, 2026.  (ECF No. 66).  The court held oral argument on the motion on June 24, 2026.  For the reasons set forth below, the motion to suppress and for a *Franks* hearing is **DENIED**.

## II.    FACTUAL BACKGROUND

On February 22, 2024, ATF Special Agent Daniel Bowling obtained a federal search warrant from Magistrate Judge Patricia T. Morris, who has been a Magistrate Judge in the Eastern District of Michigan since 2014.  (ECF No. 65,

Exhibit A, PageID.200-213).  That same day, Special Agent Bowling submitted an affidavit in support of that warrant detailing his investigation.  The affidavit detailed his prior law enforcement experience, which included ten years as a Police Officer with the Metropolitan Nashville Police Department, including three years in their Gang Unit.  *Id*. at PageID.202.  Special Agent Bowling also had been an ATF agent for nearly nine years at the time, having participated in "countless" investigations resulting in numerous successful federal prosecutions.  *Id*.  According to the government, the affidavit provided numerous facts showing probable cause:

- CI-1, a known and reliable informant, provided information that a man who he knew as "P" was distributing crack and heroin.  He provided a description of "P", the vehicle he used, the phone number "P" used, and later identified Dandrick Legardye as "P" after law enforcement preliminarily identified "P" and showed CI-1 a picture of Legardye.  *Id*. at 203-204.

- A search of Legardye's criminal record revealed prior arrests and convictions, including convictions for dangerous drugs in 1998, 2004, 2005, and a federal felon in possession of firearm conviction in 2010.  *Id*. at 204-205.

2

- CI-1 introduced an undercover officer to Legardye. The undercover officer then made six separate purchases of suspected fentanyl from Legardye.  In the first four instances, Legardye's location immediately before the purchases was not determined, but he did not appear to come immediately from the target residence.  After a purchase in December 2023, surveillance lost sight of Legardye in the neighborhood near the target residence.  *Id*.  Law enforcement sent the suspected narcotics from four of the purchases to the Michigan State Police Crime laboratory, which determined that they were fentanyl.  *Id*. at 206.

- On January 25, 2024—less than a month before the warrant was issued—Special Agent Bowling observed a white Ram 1500 truck outside the target residence.  An agent saw Legardye arrive at the Target Residence, enter for two minutes, and then emerge from it.  Agents then observed Legardye drive the truck from the Target Residence directly to the drug transaction.  Legardye distributed 15 grams of heroin to the undercover agent.  *Id*.  Special Agent Bowling believed, based upon those observations, that Legardye acquired the narcotics for that deal from inside the target residence.  *Id*.

- Review of a fixed surveillance platform demonstrated that Legardye frequently stayed overnight at the target residence and the platform provided a snapshot, included in the affidavit, of Legardye leaving the target residence. *Id*. at 207.

- On February 19, 2024—just three days before the warrant was issued—the undercover officer contacted Legardye to facilitate another narcotics transaction. *Id*. Legardye indicated that he was not in Flint, but would have another person meet with the undercover to complete the transaction if necessary. *Id*. at 207-208.

- The next day, Legardye informed the undercover agent that he would complete the narcotics transaction. He indicated the white truck would be used for the deal. Agents observed a female drive in a white Chevy Tahoe to the target residence, enter for a brief time, and then emerge from it. That female then drove to the designated location for the drug deal, where the undercover agent then entered the Tahoe and bought 15 grams of suspected fentanyl from her. *Id*. The undercover agent later indicated to Legardye that the undercover agent had overpaid for the transaction, which Legardye acknowledged. *Id*.

4

- The remainder of the affidavit detailed Special Agent Bowling's knowledge that individuals who possess narcotics often possess other items such as scales, cutting agents, drug ledgers, other narcotics, and often utilize cellular phones to further their narcotics transactions. *Id*. at 209-210.

On February 29, 2024, agents executed the warrant at Legardye's residence.  (ECF No. 1, 4-6).  Legardye was present when they did so.  *Id*. at 4. Agents seized various controlled substances from Legardye's residence, including 170 grams of methamphetamine, 3 grams of crack cocaine, 26 grams of cocaine, 52 grams of heroin, fentanyl pills, and hydrocodone pills. *Id*. at 5.  Legardye provided a post-*Mirandized* statement, admitting that the methamphetamine was his and that he occasionally sold it.  *Id*.  A review of Legardye's cellular phone indicated that he was engaged in narcotics sales. *Id*. at 5-6.

A complaint was issued against Legardye on May 1, 2024, and a grand jury indicted him on June 27, 2024, for possession with intent to distribute over 50 grams of methamphetamine.  (ECF No. 1, 2-6; ECF No. 16, 36-38). Legardye now brings a motion to suppress the evidence recovered as a result

of the search warrant and the statement that he made to law enforcement and seeks a *Franks* hearing.

## III.   ANALYSIS

### A.      The Affidavit is Supported by Probable Cause

The standard for probable cause, the Supreme Court has observed, is "incapable of precise definition or quantification into percentages." *United States v. Sanders*, 106 F.4th 455, 461 (6th Cir.), cert. denied, 145 S. Ct. 603, (2024) (quoting *Maryland v. Pringle*, 540 U.S. 366, 371 (2003).  Probable cause "exists when there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Id*. (quoting *United States v. Grubbs*, 547 U.S. 90, 95 (2006) (internal quotation marks and citation omitted)).  Or it requires "reasonable cause" or "reasonable grounds to believe" that contraband will be located on the property to be searched.  *Id*. (quoting *Zurcher v. Stanford Daily*, 436 U.S. 547, 556 & n. 6 (1978) (quotation omitted)).  Importantly, "whatever nomenclature one uses to describe the concept, probable cause, at its core, 'depends on the totality of the circumstances.'" *Id*. (quoting *Maryland v. Pringle*, 540 U.S. 366, 371 (2003)).

Defendant first argues that the affidavit failed to establish a nexus between the target residence and narcotics activity because no drug activity

was observed at or in the residence.  More specifically, Defendant points out that no informant reported purchasing drugs at the residence; no undercover agent entered the residence; no surveillance captured drug activity within or around the residence; no trash pulls or canine alert connected the residence to narcotics; and there were no emblematic hallmarks of a stash house such as heavy foot traffic or short stay visitors.  While Defendant points out what the affidavit lacks, the court must look at what the affidavit contains to evaluate probable cause, not what the affidavit does not contain.  *United States v. Christian*, 925 F.3d 305, 312 (6th Cir. 2019); *United States v. Hines*, 885 F.3d 919 (6th Cir. 2018) (the inquiry "requires us to look holistically at what the affidavit does show, instead of focusing on what the affidavit does not contain, or the flaws of each individual component of the affidavit."). Defendant acknowledges that the Sixth Circuit has recognized that "probable cause exists to search a residence for drug-related evidence when a drug dealer travels directly from the residence to the site of a drug deal." *United States v. Miller*, 850 F. App'x 370, 373 (6th Cir. 2021), but argues that the facts here are distinguishable from the cases where this principle has been applied.

Accordingly to Defendant, these cases typically involve a suspect who was already present at the residence when the transaction was arranged, who

7

departed with visible items, or who returned to the residence after the transaction, thereby establishing a pattern of use.  (ECF No. 65, PageID.186-87, citing *United States v. Ellison*, 632 F.3d 347, 349 (6th Cir. 2011) (informant observed suspect exit the side door of the residence and hand cocaine to another person before returning inside)).  Defendant points out that he arrived at the target residence from an unknown location, spent two minutes inside and left and no agent observed him carrying anything inside the residence or out of the residence.  Defendant argues that no agent observed any activity consistent with narcotics retrieval and the two minute stop is equally consistent with an innocent purpose.  However, that innocent explanations for the brief stop could exist does not undermine probable cause.  *See United States v. Tagg*, 886 F.3d 579, 586 (6th Cir. 2018) (the law "does not require officers to rule out a suspect's innocent explanation for suspicious facts" to establish probable cause.) (quotation omitted); *United States v. Martin*, 289 F.3d 392, 400 (6th Cir. 2002) ("Although innocent explanations for some or all of these facts may exist, this possibility does not render the … determination of probable cause invalid.").  Further, the present factual scenario is remarkably similar to that in *United States v. Coleman*, 923 F.3d 450, 457 (6th Cir. 2019), where the Sixth Circuit found the search warrant affidavit to be

8

supported by probable cause.  There, police officers had arranged for several controlled buys from Coleman.  *Id*.  Before the last controlled buy, the officers "observed [Coleman] drive directly from his condo to the" designated site.  *Id*.  The Sixth Circuit held that this evidence established a sufficient nexus to the condo because it allowed for "a reasonable inference that he transported narcotics from his residence to the location of the cocaine sale."  *Id*.  The court finds the present facts indistinguishable from *Coleman*.

Defendant also argues that the affidavit omitted a "critical fact." According to Defendant, based on information and belief, on the morning of January 25, 2024, agents followed him and observed him meet with an unknown subject before his arrival at the Target Residence.  Defendant contends that this encounter would supply a far more plausible source for the narcotics than the two minute stop at the residence.  By omitting the first meeting and then asserting that Defendant acquired the narcotics from the target residence, Defendant contends the affidavit creates a materially misleading impression of events, particularly where in the other controlled purchases, surveillance never established that Defendant came from or returned to the target residence.  According to Defendant, these facts, if included in the affidavit, would have negated the magistrate judge's finding of

probable cause.  Defendant does not, however, offer any case law suggesting that evidence of such a prior stop would negate probable cause.  Indeed, case law suggests the contrary.  *See United States v. Bucio-Cabrales*, 635 F. App'x 324, 334 (6th Cir. 2016) (defendant traveled to two addresses—one of which was home—before making narcotics sales, which supported inference he was storing narcotics at his residence).  Further, case law is clear that where an affidavit outlines that a defendant was observed visiting his residence right before he traveled to the site of a drug sale, it provides a "neutral magistrate with a substantial basis to conclude that Defendant may have stopped at his residence to pick up some of his merchandise before meeting his customer at another location." *United States v. Gunter*, 266 F. App'x 415, 419 (6th Cir. 2008).  Such evidence, when combined with the affiant's statements that he has significant experience in narcotics investigations, "is sufficient to establish a nexus between Defendant's illegal activities and his residence." *Id*.

Despite the clear holdings of *Coleman* and *Gunter*, Defendant also argues that the affidavit itself undermines the inference that the Target Residence was a narcotics stash house because in four of the six controlled purchases, it did not appear that Defendant came directly from the residence.

10

Such facts do not negate probable cause.  As observed in *Coleman*, three controlled buys of cocaine were made from Coleman and agents only observed him leaving his residence to the sale for the most recent purchase, which was two weeks before the warrant issued.  *Id*. at 457.  These facts were sufficient to establish that Coleman was an active drug-trafficker at the time the warrant issued and provided "a reasonable inference that he transported narcotics from his residence to the location of the cocaine sale." *Id*.  The court reached this conclusion despite the fact agents observed Coleman leave his residence to go to the sale during only one of the three controlled buys.  *See id*. and *United States  v. Coleman*, Case No. 17-00136 (W.D. Mich.), ECF No. 30-1 (search warrant affidavit).  Thus, the fact that agents here were only able to confirm that Defendant (or his associate) stopped at his residence just before proceeding to a drug transaction in two of the six controlled buys does not undermine probable cause.

Despite Defendant's arguments to the contrary, the transaction involving his associate – regardless of her true identity – further buttresses probable cause.  Defendant contends that this transaction does not establish probable cause the affidavit does not establish that the associate resided at the target residence or had any other connection to it.  And the affidavit does

not indicate that Defendant instructed the associate to retrieve narcotics from the target residence.  Defendant argues that the government's inference that because the associate briefly entered the target residence before conducting the drug deal, she must have retrieved the narcotics from inside, is mere speculation.  Again, Defendant points to what the affidavit does not contain – that agents did not observe the associate carry narcotics out of the residence, that anyone at the residence handed her narcotics, or that the narcotics she delivered to the undercover agent originated from the target residence instead of some other location or her vehicle.  But the court must look at what the affidavit does contain and under *Coleman* and *Gunter*, the fact that Defendant's associate who completed the drug sale at the behest of Defendant, stopped at the target residence before going to the site of the drug sale, is further evidence connecting the target residence to drug trafficking.

Finally, Defendant argues that the affidavit's reliance on his status as a drug dealer and boilerplate "training and experience" language cannot substitute for particularized facts that supply the nexus between the drug dealing and the Target Residence.  It is true that the mere allegation that the defendant is a drug dealer, without more, is not sufficient to tie the criminal activity to the defendant's residence.  *United States v. Frazier*, 423 F.3d 526,

12

533 (6th Cir. 2005).  Here however, as discussed in detail above, the affidavit does not contain only allegations that Defendant is a drug dealer as established by the six controlled buys.  Instead, it details two controlled buys where the seller (Defendant and his associate) stopped at the target residence before proceeding to the location to complete the drug sale.  Under applicable Sixth Circuit authority, this is sufficient to establish a nexus between the drug dealing described in the affidavit and the target residence.  While the allegations that Defendant is an active drug dealer buttress probable cause, *see Coleman*, 923 F.3d at 457, those allegations are not the sole basis in the affidavit for probable cause in this case.  Thus, *Frazier* is distinguishable.

Similarly, Defendant points out that training and experience, without some reference to drug activity at the residence, does not even meet the "minimally sufficient nexus" standard for the good faith exception.  *United States v. Grant*, 2023 U.S. App. LEXIS 337, *12-13 (6th Cir. Jan. 6, 2023).  Again, however, the affidavit here contains far more than "training and experience" allegations.  Rather, the affidavit details two controlled buys where the seller stopped at the target residence before proceeding to another location to complete the drug sale.  As explained above, under applicable Sixth Circuit

authority, this is sufficient to establish a nexus between the drug dealing described in the affidavit and the target residence.  Indeed, the Sixth Circuit held in *Gunter* that such evidence combined with the affiant's statements that he has significant experience in narcotics investigations, is "sufficient to establish a nexus between Defendant's illegal activities and his residence." *Id*. at 419.  Accordingly, the court finds that the affidavit here does not suffer from the same deficiencies as that in *Grant*.

For these same reasons, the court finds *United States v. Myles*, 307 F. Supp. 3d 676 (E.D. Mich. 2018) inapposite.  There, the government submitted an affidavit showing that the defendant was involved in drug trafficking and money laundering based on confidential source information, social media photographs showing drugs and cash, GPS tracker data, and the defendant's associations with known criminals.  *Id*.  The court found the affidavit "completely devoid of any facts suggesting that Defendant deals drugs, keeps contraband or other indicia of drug trafficking in his current residence." *Id*. at 683.  In other words, the court found no nexus between the residence and the drug trafficking.  Here, in contrast, as explained above in detail, the affidavit contains sufficient allegations to support a nexus between Defendant's drug

14

trafficking and the target residence.  Thus, the court finds *Myles* distinguishable from the case at hand.

In sum, the court finds that the affidavit is well supported by probable cause under applicable case law because (1) it establishes that Defendant is an active drug dealer; (2) it establishes a nexus between the drug trafficking activity and the target residence where Defendant and his associate both made a brief stop at the target residence before proceeding to the site of a drug deal; and (3) the foregoing evidence, combined with the affiant's statements that he has significant experience in narcotics investigations, is sufficient to establish a nexus between Defendant's drug trafficking and his residence.

B.      Defendant is Not Entitled to a *Franks* Hearing

There is "a presumption of validity with respect to the affidavit supporting the search warrant." *Franks v. Delaware*, 438 U.S. 154, 171 (1978).  But "a search warrant is invalid when the supporting affidavit contains a statement, *necessary to the finding of probable cause*, that is later demonstrated to be false and included by an affiant knowingly and intentionally, or with a reckless disregard for the truth." *United States v. Duval*, 742 F.3d 246, 250 (6th Cir. 2014) (citing *Franks*, 438 U.S. at 155–56)

(emphasis added).  *Franks* also applies to cases where an affiant intentionally omitted information in an affidavit, which is critical to the probable cause determination.  *Id.*  A defendant may request an evidentiary *Franks* hearing if he "raises a substantial question as to whether the affidavit supporting the search warrant contained materially false information."  *United States v. Caldwell*, 114 F. App'x 178, 181 (6th Cir. 2004) (citing *Franks,* 438 U.S. at 156). This requires making a "substantial preliminary showing" of knowing or reckless falsity.  *Id.* at 182.  If the defendant is able to show deliberate falsity or reckless disregard for the truth, those portions of the affidavit are set aside, and the remaining content is analyzed to determine if it supports probable cause.  *Franks,* 438 U.S. at 171–72.  Thus, the offending information must be essential to a probable cause finding.  *Id.*  Innocent or negligent mistakes are not enough.  *Id.* at 171.

Under *Franks,* a defendant is entitled to a hearing on the veracity of a search warrant affidavit "if he makes specific allegations of deliberate falsehood or reckless disregard for the truth on the part of the affiant [ ] and supports the[ ] allegations with an offer of proof."  *United States v. Marlowe,* 993 F.2d 1548 (6th Cir. 1993).  "The offer of proof" a defendant must proffer "must consist of affidavits or 'otherwise reliable statements' that support the

contention that the affiant deliberately or recklessly falsified information in the affidavit." *Id*. at 1548 (quoting *Franks*, 438 U.S. at 171).  "If the defendant does not produce such sworn or reliable statements, their absence must be satisfactorily explained." *Id*.  In evaluating search warrant affidavits, courts begin with a "presumption of validity," and "[a] defendant challenging the validity of a search warrant's affidavit bears a heavy burden." *Franks*, 438 U.S. at 171; *United States v. Bateman*, 945 F.3d 997, 1008 (6th Cir. 2019) (noting that a defendant must "make a substantial preliminary showing that the affiant knowingly and intentionally, or with reckless disregard for the truth, included a false statement," to be entitled to a *Franks* hearing).

Defendant posits two grounds for his claim that he is entitled to a *Franks* hearing.  First, Defendant argues that the affidavit omitted a "critical fact."  According to Defendant, based on information and belief, on the morning of January 25, 2024, agents followed him and observed him meet with an unknown subject before his arrival at the target residence.  Defendant contends that this encounter would supply a far more plausible source for the narcotics than the two minute stop at the residence.  By omitting the first meeting and then asserting that Defendant acquired the narcotics from the target residence, Defendant contends the affidavit creates a materially

misleading impression of events, particularly where in the other controlled purchases, surveillance never established that Defendant came from or returned to the target residence.  According to Defendant, these facts, if included in the affidavit, would have negated the magistrate judge's finding of probable cause.  As explained above, Defendant does not, however, offer any case law suggesting that evidence of such a prior stop would negate probable cause.  And case law from the Sixth Circuit suggests the contrary.  *See United States v. Bucio-Cabrales*, 635 F. App'x 324, 334 (6th Cir. 2016) (defendant traveled to two addresses—one of which was home—before making narcotics sales, which supported inference he was storing narcotics at his residence).  The court finds that the alleged omission here – a stop before the stop at the target residence – is not a material omission warranting a *Franks* hearing.

Second, Defendant points to the possible misidentification of Defendant's associate who participated in one of the controlled buys of narcotics.  The associate was identified in the affidavit as Rika Doby.  Defendant asserts that the individual was misidentified and offers the affidavit of Ms. Doby, who indicates that she does not know Defendant, never drove the while Chevrolet Tahoe, has never been to the target address, never picked up items from the target address and never met or exchanged items with anyone

at the BP Gas Station on Dort Highway in Flint, MI.  (ECF No. 68, 71, affidavit of Rika Doby).  Based on information and belief, counsel for Defendant indicates that Ms. Doby was not in the State of Michigan at the time of the transaction.  Thus, Defendant requests an evidentiary hearing where this may be established and pursuant to *Franks*, potential misstatements in the affidavit could also lead to suppression.

Defendant's argument misses the mark.  As the government points out, even assuming agents were mistaken as to the person's identity, a person still arrived at the target residence at Defendant's behest, entered and exited shortly thereafter, and then delivered the fentanyl to the undercover officer.  The misidentification is not material to the probable cause to search the target residence.  Nor does Defendant suggest that the misidentification was intentionally false or made with reckless disregard for the truth.  In sum, Defendant fails to sufficiently explain how the identity of the person who completed the deal for him has any effect on probable cause or requires a *Franks* hearing to sort out.

C.  The Good Faith Exception Applies

Even if the warrant were found to be invalid, the good faith exception to the exclusionary rule applies.  "[J]udicial suppression is inappropriate when

an officer conducts a search in 'objectively reasonable reliance' on a warrant later deemed to be invalid." *United States v. Neal,* 106 F.4th 568, 572 (6th Cir. 2024) (quoting *United States v. Leon,* 468 U.S. 897, 922 (1984)).  However, the exclusion of evidence is not automatic; instead, the court asks whether exclusion will provide "appreciable deterrence").  *United States v. Herring,* 555 U.S. 135, 141-42 (2009).  This is because "[p]enalizing the officer for the [judge's] error, rather than his own, cannot logically contribute to the deterrence of Fourth Amendment violations." *United States v. White,* 874 F.3d 490, 505–06 (6th Cir. 2017) (quoting *Leon,* 468 U.S. at 921); *see also Neal,* 106 F.4th at 572 (observing that when the affidavit lacks probable cause, "the authorizing judge—not the officer—is the blameworthy party").

The "good-faith inquiry is confined to the objectively ascertainable question whether a reasonably well[-]trained officer would have known that the search was illegal despite the magistrate's authorization." *Leon,* 468 U.S. at 922 n.23.  "Some modicum of evidence, however slight[,] between the criminal activity at issue and the place to be searched" will support an officer's good-faith belief in the existence of probable cause.  *United States v. McCoy,* 905 F.3d 409, 416 (6th Cir. 2018) (quoting *White,* 874 F.3d at 496).  Thus, only when the affidavit is "so lacking in indicia of probable cause as to

render official belief in its existence entirely unreasonable" will the search fall outside the good-faith exception and the evidence be suppressed. *Neal*, 106 F.4th at 572 (quoting *Leon*, 468 U.S. at 923).

A court's "good-faith inquiry is confined to the objectively ascertainable question whether a reasonably well trained officer would have known that the search was illegal" in light of "all of the circumstances." *Herring v. United States*, 555 U.S. 135, 145 (2009). The affidavit in support of the warrant is not "'so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable.'" *United States v. Norey*, 31 F.4th 631, 636 (8th Cir. 2022) (quoting *Leon*, 468 U.S. at 923). More specifically, the affidavit establishes that Defendant is an active drug dealer by detailing six controlled buys of controlled substances between Defendant and his associate and an undercover officer. The affidavit also establishes a nexus between the drug trafficking activity and the target residence by detailing two controlled buys where Defendant and his associate each made a brief stop at the target residence before proceeding to the site of a drug deal with an undercover agent. Finally, the foregoing evidence, combined with the affiant's statements that he has significant experience in narcotics investigations, is sufficient to establish a nexus between Defendant's drug trafficking and his

residence.  Accordingly, this is not a case where the affidavit is "completely devoid of any nexus between" the illegal activity and the place to be searched or the item to be seized, *United States v. Carpenter*, 360 F.3d 591, 595–96 (6th Cir. 2004), nor does it "nakedly assume or vaguely conclude, without attempting to demonstrate why, probable cause has been satisfied," *Sanders*, 106 F.4th at 469 (citations omitted).  Thus, the good faith exception applies.

## IV.   CONCLUSION

For the reasons set forth above, the court **DENIES** Defendant's motion to suppress and for a *Franks* hearing.

**SO ORDERED**.

Date: June 26, 2026                                   s/F. Kay Behm
                                                      F. Kay Behm
                                                      United States District Judge